# EXHIBIT A

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| PAUL WINKA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. _____ |
| | ) |
| LYFT, INC. | ) |
| **Serve:** CT Corporation System | )   JURY TRIAL DEMANDED |
| 120 S. Central Avenue | ) |
| Clayton, MO 63105 | ) |
| | ) |
| Defendant. | ) |

**PETITION**

COMES NOW Plaintiff Paul Winka ("Plaintiff"), by and through undersigned counsel, and for his Petition against Defendant Lyft, Inc. ("Lyft"), makes the following allegations:

**PARTIES**

1.      Plaintiff Paul Winka is an individual and citizen of the State of Missouri.

2.      Lyft, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

3.      Lyft operates its ridesharing platform in every state in the U.S.A., including Missouri.

4.      Personal Jurisdiction is proper in Missouri over Defendant as it conducted substantial business activities in Missouri and Plaintiff's cause of action arises out of these business activities.

5.      Venue is proper in the Circuit Court of the County of St. Louis pursuant to MO. REV. STAT. § 508.010.4 because all actions pertaining to this suit, including injury to Plaintiff, occurred in St. Louis County, and Plaintiff resides in St. Louis County.

1

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

**FACTUAL ALLEGATIONS**

6. This action arises out of incidents tied to a ride Plaintiff Winka accepted as a Lyft driver on May 5, 2024, in which the rider was fleeing the scene of a double homicide for which he has since been indicted.

7. Plaintiff has been a Lyft driver since September 1, 2017.

8. Plaintiff is a United States Air Force veteran who served honorably from February 2000 to December 2010. During his military career, he deployed to multiple combat zones, including Oman (February - July 2002), Iraq - specifically Baghdad and Mosul (June - November 2004), and Basrah (February - November 2009). He served as a contingency contracting officer operating in high-risk environments. After separating from the military, Plaintiff worked as a defense contractor in Kandahar, Afghanistan for CACI from January 2011 to June 2013, and with DynCorp from September 2014 to November 2015 in Kabul, Mazar-e-Sharif, and Kandahar, where he advised the Afghan National Police on procurement matters.

9. As a result of his military service, Plaintiff is 100% disabled.

10. Additionally, because of his military service, Plaintiff has suffered from Post-Traumatic Stress Disorder ("PTSD"), which was initially diagnosed on April 7, 2011, with an effective date of December 16, 2010.

11. Since 2012, Lyft has operated a transportation service to the public for profit.

12. The Lyft Application (the "App") permits Lyft's drivers to connect with unknown individuals who are requesting automobile rides.

13. Lyft requires its drivers to accept all ride requests when logged into its App or be subject to potential discipline in the form of reduced prevalence in the App's algorithm or temporary suspension.

2

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

14.     According to the Missouri Court of Appeals for the Eastern District, "the Lyft App has sufficient similarities to a tangible product."

**Lyft Fails to Protect its Drivers.**

15.     In its 2024 annual 10-K filing, Lyft proudly states that it pioneers innovation, that it is "one of the largest multimodal transportation networks in the United States and Canada[,]" and that it has a "robust technology platform." In that filing, Lyft showed nearly $400 million in expenses on research and development.

16.     In its section called *Our Proprietary Data-Driven Technology Platform* Lyft states,

   a. Our robust technology platform powers the millions of rides and connections that we facilitate every day and provides insights that drive our platform in real-time. We leverage historical data to continuously improve experiences for drivers and riders on our platform. Our platform analyzes large datasets covering the ride lifecycle, from when drivers go online and riders request rides, to when they match, which route to take and any feedback given after the rides. Utilizing machine learning capabilities to predict future behavior based on many years of historical data and use cases, we employ various levers to balance supply and demand in the marketplace, creating increased driver earnings while maintaining strong service levels for riders. We also leverage our data science and algorithms to inform our product development.

17.     In that filing Lyft stated that it had achieved "record cash flow generation" while showing a total revenue of $5.8 billion.

18.     As of the date of this complaint, Lyft has a market capitalization of $6.69 billion.

19.     A Lyft ride consists of two separate parties, the drivers and the riders.

20.     Lyft takes a great deal of precautions to protect its riders yet takes virtually no steps to protect the drivers.

21.     Lyft performs a criminal background check on all drivers, making an effort to ensure riders are not placed in the dangerous position of being stuck in a car with a potentially violent individual.

22.     Research from organizations such as OSHA has documented the dangers associated with driving for rideshare services and recommends that companies like Lyft implement physical and

3

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

procedural safeguards to protect drivers, including the use of physical barriers and surveillance cameras. Lyft itself has compiled data confirming thousands of assaults on its drivers.

23.    Despite this research and firsthand knowledge, Lyft refuses to protect its drivers.

24.    As stated on Lyft's website, most background checks which are required for drivers are completed in only a few days.

25.    Even though they could extend those background checks to riders, in order to ensure drivers are also not placed in the confinement of a vehicle with a dangerous individual, Lyft has chosen to forgo any form of background check on its riders.

26.    This has been an issue for Lyft in the past. In some cases Lyft has failed to even verify the identity of its riders in cases leading to violent and fatal outcomes for drivers.

27.    Notably, Lyft has a "Riders" section of its 10-K where it dedicates a paragraph to acknowledging the safety measures they have taken for riders. The section for "Drivers," however, excludes any reference to safety measures for them.

28.    Lyft does not warn its drivers of the risks of dangerous riders, nor does it train them to identify particularly dangerous situations, neighborhoods, or riders.

29.    Drivers also risk suspension or deactivation of their Lyft account for declining too many rides, forcing them into accepting potentially dangerous rides.

30.    Lyft drivers are provided with virtually no information about riders or the trip details.

31.    Lyft knows the risk of riders' assaults on drivers can be mitigated yet takes no steps to ensure safety for drivers.

32.    Like most modern technologies, Lyft acknowledges in its privacy policy that it is constantly collecting data from its users, in part to "[m]aintain the security and safety of the Lyft Platform and its users."

4

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

33.    Virtually all data collected from drivers and riders is mined to enhance App performance, with the ultimate goal of maximizing financial gain.

34.    Background checks on riders would cost money and reduce its customer base for the "only a few days" that it takes for driver's background checks. So instead of reducing the driver's risk of danger, Lyft has reduced costs and increased short-term revenue to its own benefit and at the expense of drivers.

35.    Among many paragraphs of their filings, website, and marketing, it is clear Lyft has no shortage of technological ability to conduct background checks. It is also clear that Lyft has the financial ability to prioritize vetting riders to protect its drivers.

36.    Though Lyft has a duty to protect both parties, the drivers and the riders, it systematically chooses to protect the riders and ignores the safety of the drivers.

**Plaintiff's Ride with Lamarr Harris.**

37.    On May 5, 2024, Plaintiff was assigned to pick up a passenger through the Lyft App, later identified as Lamarr Harris, at a designated location in St. Louis County, Missouri.

38.    Upon approaching the pickup location, Plaintiff encountered multiple police vehicles blocking the street. In response, he circled the block and stopped about one block away to await the rider.

39.    An individual emerged from a nearby wooded area and entered Plaintiff's vehicle without issue. The rider matched the general behavior Lyft drivers expect from passengers locating their ride, and Plaintiff had no indication that anything was amiss.

40.    Plaintiff began driving away from the area, and after moving approximately 50 feet, noticed flashing lights and sirens behind him.

41.    Plaintiff immediately pulled over, rolled down all windows, and waited for instructions. Law enforcement quickly approached and focused their attention on the rider, ordering him out of the car and placing him in handcuffs on the trunk of Plaintiff's vehicle.

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

42.    Police instructed Plaintiff to remain at the scene but provided no explanation regarding what was happening, despite his repeated attempts to ask. This lack of information, combined with the heavy police presence, including five or more squad cars, police tape, and a large crowd of onlookers, intensified Plaintiff's anxiety and confusion.

43.    Plaintiff remained detained at the scene for approximately 90 minutes without clear communication from officers, growing increasingly panicked as he feared he might be wrongly implicated in a serious crime.

44.    Law enforcement eventually allowed Plaintiff to leave the scene without charging or arresting him. No further contact was made by authorities after this encounter.

45.    Plaintiff later learned that Mr. Harris had been apprehended in connection with a double homicide that had occurred moments earlier in the 10700 block of Wurdack Avenue, involving victims Marc Rhodes Jr. and Lanija Cooper.

46.    The realization that Plaintiff had unknowingly transported a suspected murderer, combined with the fear and confusion experienced during his prolonged and unexplained detention, resulted in serious psychological distress.

47.    As a disabled combat veteran with diagnosed PTSD, Plaintiff's symptoms were significantly exacerbated following the incident.

48.    At the time of the incident, Mr. Harris reportedly had an active criminal case pending in St. Louis County for possession of fentanyl and unlawful possession of a firearm. [1]

49.    Lyft did not screen passengers for such risks or provide Plaintiff with any warnings, thus exposing him to serious danger.

---

[1] https://www.usatoday.com/story/news/nation/2024/05/07/missouri-teen-charged-death-shooting-siblings-lyft/73600698007/

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

**Lyft's Response to the Harris Ride.**

50.    In a statement to USA TODAY, Lyft stated that "[o]ur hearts are with the victims' loved ones as they confront this unspeakable tragedy[.]"

51.    Lyft did not reach out to Plaintiff in any way to discuss the events.

52.    Lyft went on to note, "[Lyft has] permanently removed the rider from the Lyft community and stand ready to assist law enforcement with any investigation."

53.    Critically, this action was taken after Lamarr Harris was arrested for the murders, but prior to any conviction.

54.    This indicates that Lyft, after the fact, had determined it would prevent other drivers from encountering this potentially dangerous individual, even without a conviction.

55.    However, although Mr. Harris had other criminal charges pending at the time of the ride, Lyft did nothing to prevent him from accessing the platform and putting Plaintiff at risk.

56.    Lyft is fully aware of the risks its drivers take by allowing strangers into their vehicles and has faced numerous incidents involving violent attacks on drivers.

57.    Lyft is also aware that many riders have violent criminal histories.

58.    While Lyft screens and vets its *drivers*, it takes no precautions in vetting its riders, despite its access to extensive databases and its vast resources dedicated to technology and data analysis.

**Lyft Deactivates Plaintiff's Driver Account.**

59.    Nearly eleven months after the incident, on March 26, 2025, Lyft deactivated Plaintiff's driver account without any warning or explanation, terminating his ability to earn income through the platform.

60.    Plaintiff immediately reached out to Lyft that same day to request an explanation for the deactivation and to appeal the decision.

7

61.     Lyft responded that Plaintiff had allegedly violated Lyft's Terms of Service by participating in "illicit activity that resulted in harm or decease of a user or third party."

62.     On March 27, 2025, Plaintiff replied to Lyft's response, seeking clarification about which incident they were referencing, what evidence was reviewed, and what procedures were followed in determining that Plaintiff's actions had violated Lyft's policy.

63.     Aside from the May 5, 2024, ride involving Lamarr Harris, Plaintiff has never been involved in any other dispute or incident connected to harm or decease of a Lyft user or third party.

64.     Therefore, Plaintiff believes that the incident Lyft is citing in its rationale is the Harris ride, an incident Lyft itself dispatched him to, and during which Plaintiff acted with complete transparency and compliance.

65.     In citing this event, Lyft appears to be implying that Plaintiff himself was involved in the "illicit activity that resulted in harm or decease of a user or third party," a damaging and utterly false accusation.

66.     Lyft never responded to Plaintiff's request for further clarification and did not provide any opportunity for him to present his side of the story.

67.     Lyft's actions have compounded the trauma caused by the original incident, not only by cutting off Plaintiff's income source, but also by tarnishing his reputation.

68.     Adding to the confusion and injustice, on April 17, 2025, Plaintiff received a phone call from an individual identifying herself as Kirsten (or Kristen) with Brentwood Associates, a firm purportedly representing Lyft. The caller asked Plaintiff to provide a recorded statement about the May 5, 2024, incident.

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

69.    Plaintiff found this request hypocritical and deeply upsetting. After being left in the dark for nearly a year and then unceremoniously deactivated from the platform, Lyft now sought Plaintiff's cooperation for its own internal investigation or litigation purposes.

70.    The timing of the deactivation, after a May 7, 2024, USA Today article, but before the one-year anniversary of the event, suggests that Lyft's primary interest was protecting its own reputation, rather than supporting its driver or seeking the truth.

71.    Plaintiff is forced to live with the knowledge that he was dispatched to pick up a person allegedly responsible for a double murder, just minutes after the crime occurred.

72.    The psychological burden of the May 5, 2024, incident, and Lyft's subsequent deactivation of Plaintiff's driver account, has triggered recurrent flashbacks, heightened anxiety, and exacerbation of Plaintiff's service-connected PTSD. These symptoms have disrupted Plaintiff's sleep, impaired his daily functioning, and significantly diminished his overall well-being.

73.    Lyft's response to this extraordinary event, a double homicide in which the suspect attempted to flee using Plaintiff's vehicle, was devoid of any meaningful care or accountability. Rather than treat the incident as the serious, high-visibility crisis it was, Lyft responded with cold detachment, abruptly deactivating Plaintiff's account without warning.

74.    No human representative ever contacted Plaintiff to express concern, offer support, or explain the company's actions. Instead, Lyft processed the matter as though it were a routine policy violation, handled through anonymous emails and impersonal Zendesk messages.

75.    Despite the gravity of the situation, Lyft failed to elevate the issue to a senior level of review and failed to demonstrate even basic decency toward a driver who narrowly avoided becoming collateral damage in a double murder case.

9

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

76. Even now, Lyft has taken no steps to acknowledge its mishandling or attempt to make the situation right.

77. This Court should consider this failure not only in assessing damages to Plaintiff, but also as a call for Lyft to reform its practices and ensure that future drivers are met with humanity, accountability, and a personal point of contact when crisis strikes.

## COUNT I - STRICT LIABILITY DEFECTIVE DESIGN

78. Plaintiff incorporates all prior paragraphs.

79. The Missouri Court of Appeals for the Eastern District, in *Ameer v. Lyft Inc., et al.*, determined that Lyft was a product subject to product liability claims.

80. At all times relevant, Defendant Lyft owed a duty to Plaintiff to ensure its product was not defective.

81. Even after thousands of assaults on drivers, Defendant negligently failed to maintain and develop a product that even attempts to ensure safe conditions for operation by drivers like Plaintiff, by failing to screen or background check its riders or make efforts to warn its drivers of potentially dangerous riders.

82. Therefore, Defendant has breached its duty owed to Plaintiff because it developed, manufactured, tested, distributed, and/or sold the App in a defective and unreasonably dangerous condition as described above.

83. At the time of use by Plaintiff, Defendant's App was in substantially the same condition as how the App was developed, manufactured, tested, distributed, and/or sold.

84. Plaintiff used the product as it was intended and in a manner reasonably anticipated by Defendant.

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

85.    Rider Lamarr Harris was able to take advantage of the product's design by being able to call a driver to the scene of the alleged murders, even though he had a criminal history of violent crimes.

86.    As a direct and proximate result of the negligence committed by Defendant, Plaintiff has suffered severe emotional and mental distress, causing anxiety, depression and further exacerbating his PTSD, as well as intrusive thoughts, hypervigilance, nightmares, sleeplessness, irritability, and withdrawal from social and professional activities.

87.    Plaintiff has experienced a significant resurgence of psychological symptoms related to his service-connected PTSD as a result of this incident and anticipates seeking additional mental health care in the future.

88.    Although Plaintiff has not incurred direct medical expenses due to his veteran status and access to VA-provided care, the incident has materially affected his mental health and may necessitate further treatment, including therapy or counseling, to address the trauma endured.

89.    As a result of Defendant's negligence in involving Plaintiff in Lamarr Harris's ride, Plaintiff has been removed from the Lyft App and has lost wages from driving.

90.    Plaintiff has also experienced reputational harm, fear of retaliation due to his perceived connection to a murder investigation, and disruption to his marriage and home life. The emotional toll has strained Plaintiff's relationship with his spouse and interfered with his ability to maintain normal routines and intimacy, constituting a loss of consortium.

91.    Defendant acted with a willful, wanton and malicious culpable state, as well as a complete indifference to or conscious disregard for the safety of Plaintiff and other drivers, thereby justifying an award of damages for aggravating circumstances in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct in the future.

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

WHEREFORE Plaintiff Paul Winka prays for a judgment against Defendant Lyft Inc. in an amount in excess of Twenty-Five Thousand Dollars ($25,000), which is just, fair, and adequate under the circumstances, for pre-judgment and post-judgment interest, punitive damages, for his costs herein expended, and for such other relief as the Court deems just and proper under the circumstances.

## COUNT II – NEGLIGENT DESIGN

92.    Plaintiff incorporates all prior paragraphs.

93.    The Missouri Court of Appeals for the Eastern District, in *Ameer v. Lyft Inc., et al.*, determined that Lyft was a product subject to product liability claims.

94.    At all times relevant, Defendant Lyft owed a duty to Plaintiff to ensure its product was not defective.

95.    Defendant was exclusively responsible for the design of its product, which was defective and hazardous to Plaintiff as described above.

96.    As discussed above, Defendant has failed to use ordinary care in the design of its product causing a defective and unreasonably dangerous condition.

97.    As a direct and proximate result of the failure of Defendant to properly design its product, Plaintiff has suffered severe emotional and mental distress, causing anxiety, depression and further exacerbating his PTSD, as well as intrusive thoughts, hypervigilance, nightmares, sleeplessness, irritability, and withdrawal from social and professional activities.

98.    Plaintiff has experienced a significant resurgence of psychological symptoms related to his service-connected PTSD as a result of this incident and anticipates seeking additional mental health care in the future.

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

99.    Although Plaintiff has not incurred direct medical expenses due to his veteran status and access to VA-provided care, the incident has materially affected his mental health and may necessitate further treatment, including therapy or counseling, to address the trauma endured.

100.    As a result of Defendant's negligence in involving Plaintiff in Lamarr Harris's ride, Plaintiff has been removed from the Lyft App and has lost wages from driving.

101.    Plaintiff has also experienced reputational harm, fear of retaliation due to his perceived connection to a murder investigation, and disruption to his marriage and home life. The emotional toll has strained Plaintiff's relationship with his spouse and interfered with his ability to maintain normal routines and intimacy, constituting a loss of consortium.

102.    Defendant acted with a willful, wanton and malicious culpable state, as well as a complete indifference to or conscious disregard for the safety of Plaintiff and other drivers, thereby justifying an award of damages for aggravating circumstances in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE Plaintiff Paul Winka prays for a judgment against Defendant Lyft Inc. in an amount in excess of Twenty-Five Thousand Dollars ($25,000), which is just, fair, and adequate under the circumstances, for pre-judgment and post-judgment interest, punitive damages, for his costs herein expended, and for such other relief as the Court deems just and proper under the circumstances.

## COUNT III - NEGLIGENT FAILURE TO WARN

103.    Plaintiff incorporates all prior paragraphs.

104.    The Missouri Court of Appeals for the Eastern District, in *Ameer v. Lyft Inc., et al.*, determined that Lyft was a product subject to product liability claims.

105.    At all times relevant, Defendant Lyft owed a duty to Plaintiff to ensure its product was not defective.

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

106. Defendant was exclusively responsible for the manufacture and design of its product, which was defective and hazardous to Plaintiff as described above.

107. Defendant knew that its products did not screen for dangerous riders, knew that drivers in using its product had suffered violent and fatal attacks, and failed to use ordinary care to adequately warn Plaintiff and other drivers of the hazardous conditions in its product.

108. As a direct and proximate result of this failure by Defendant, Plaintiff has suffered severe emotional and mental distress, causing anxiety, depression and further exacerbating his PTSD, as well as intrusive thoughts, hypervigilance, nightmares, sleeplessness, irritability, and withdrawal from social and professional activities.

109. Plaintiff has experienced a significant resurgence of psychological symptoms related to his service-connected PTSD as a result of this incident and anticipates seeking additional mental health care in the future.

110. Although Plaintiff has not incurred direct medical expenses due to his veteran status and access to VA-provided care, the incident has materially affected his mental health and may necessitate further treatment, including therapy or counseling, to address the trauma endured.

111. As a result of Defendant's negligence in involving Plaintiff in Lamarr Harris's ride, Plaintiff has been removed from the Lyft App and has lost wages from driving.

112. Plaintiff has also experienced reputational harm, fear of retaliation due to his perceived connection to a murder investigation, and disruption to his marriage and home life. The emotional toll has strained Plaintiff's relationship with his spouse and interfered with his ability to maintain normal routines and intimacy, constituting a loss of consortium.

113. Defendant acted with a willful, wanton and malicious culpable state, as well as a complete indifference to or conscious disregard for the safety of Plaintiff and other drivers, thereby justifying an

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

award of damages for aggravating circumstances in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE Plaintiff Paul Winka prays for a judgment against Defendant Lyft Inc. in an amount in excess of Twenty-Five Thousand Dollars ($25,000), which is just, fair, and adequate under the circumstances, for pre-judgment and post-judgment interest, punitive damages, for his costs herein expended, and for such other relief as the Court deems just and proper under the circumstances.

## COUNT IV - NEGLIGENCE

114.    Plaintiff incorporates the above allegations as though fully set forth herein.

115.    Missouri recognizes that a manufacturer of a product has the duty to warn ultimate users of its products which are inherently dangerous or are dangerous because of the use to which they are put.

116.    At all times relevant, Defendant Lyft owed a duty to Plaintiff and others to exercise reasonable care so as to not endanger or harm Plaintiff or others in the operation of its business.

117.    Defendant Lyft had actual knowledge that Lyft drivers, including Plaintiff, were at risk of being assaulted and/or killed by riders with violent criminal backgrounds.

118.    Despite this knowledge, Defendant breached its duty by failing to exercise reasonable care to prevent Plaintiff and other drivers, from picking up dangerous individuals.

119.    As a direct and proximate result of this failure by Defendant, Plaintiff has suffered severe emotional and mental distress, causing anxiety, depression and further exacerbating his PTSD, as well as intrusive thoughts, hypervigilance, nightmares, sleeplessness, irritability, and withdrawal from social and

120.    Plaintiff has experienced a significant resurgence of psychological symptoms related to his service-connected PTSD as a result of this incident and anticipates seeking additional mental health care in the future.

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

121. Although Plaintiff has not incurred direct medical expenses due to his veteran status and access to VA-provided care, the incident has materially affected his mental health and may necessitate further treatment, including therapy or counseling, to address the trauma endured.

122. As a result of Defendant's negligence in involving Plaintiff in Lamarr Harris's ride, Plaintiff has been removed from the Lyft App and has lost wages from driving.

123. Plaintiff has also experienced reputational harm, fear of retaliation due to his perceived connection to a murder investigation, and disruption to his marriage and home life. The emotional toll has strained Plaintiff's relationship with his spouse and interfered with his ability to maintain normal routines and intimacy, constituting a loss of consortium.

124. Defendant acted with a willful, wanton and malicious culpable state, as well as a complete indifference to or conscious disregard for the safety of Plaintiff and other drivers, thereby justifying an award of damages for aggravating circumstances in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE Plaintiff Paul Winka prays for a judgment against Defendant Lyft Inc. in an amount in excess of Twenty-Five Thousand Dollars ($25,000), which is just, fair, and adequate under the circumstances, for pre-judgment and post-judgment interest, punitive damages, for his costs herein expended, and for such other relief as the Court deems just and proper under the circumstances.

## COUNT V – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

125. Plaintiff incorporates the above allegations as though fully set forth herein.

126. Defendant owed Plaintiff a duty of care because Plaintiff's injury was foreseeable by Defendant Lyft, because it had extensive knowledge of the likelihood of driver injury due to dangerous riders based on thousands of prior instances, because the magnitude of the burden of guarding against this

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

risk is easily within Defendant's capabilities, and because the consequences of placing this burden on its drivers has many times resulted in injury and death.

127.    The foreseeability is beyond a mere probability of injury as a reasonable person would take precautions to avoid having individuals with violent criminal backgrounds in the close confines of their vehicle, which Defendant knows, or should have known.

128.    Defendant had a duty of care to take precautions to protect Plaintiff and others from the criminal acts of third parties because Defendant should have realized based on facts within its knowledge that its act or omission to act exposed Plaintiff and others to an unreasonable risk of harm through the conduct of another. Additionally, Defendant has brought Plaintiff into contact or association with a person, Lamarr Harris, that it should have known to be particularly liable to commit criminal acts, and the circumstances afforded a peculiar opportunity or temptation for such misconduct.

129.    Defendant was better equipped than Plaintiff or any other drivers to anticipate and guard against the harm here and it would not have been overly burdensome on Defendant to use its knowledge, superior resources, and technological capabilities to implement measures which could have arguably prevented harm to Plaintiff under the circumstances of this case.

130.    Despite this knowledge, Defendant breached its duty by failing to exercise reasonable care to prevent Plaintiff and other drivers, from picking up dangerous individuals.

131.    As a direct and proximate result of this failure by Defendant, Plaintiff has suffered severe emotional and mental distress, causing anxiety, depression and further exacerbating his PTSD, as well as intrusive thoughts, hypervigilance, nightmares, sleeplessness, irritability, and withdrawal from social and professional activities.

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

132.    Plaintiff has experienced a significant resurgence of psychological symptoms related to his service-connected PTSD as a result of this incident and anticipates seeking additional mental health care in the future.

133.    Although Plaintiff has not incurred direct medical expenses due to his veteran status and access to VA-provided care, the incident has materially affected his mental health and may necessitate further treatment, including therapy or counseling, to address the trauma endured.

134.    By further removing Plaintiff's ability to continue working as a driver, and by implying that Plaintiff was directly involved in the "illicit activity that resulted in harm or decease of a user or third party, Defendant has further exacerbated Plaintiff's mental and emotional distress.

135.    Plaintiff has also experienced reputational harm, fear of retaliation due to his perceived connection to a murder investigation, and disruption to his marriage and home life. The emotional toll has strained Plaintiff's relationship with his spouse and interfered with his ability to maintain normal routines and intimacy, constituting a loss of consortium.

136.    Defendant should have realized that its conduct involved an unreasonable risk of causing distress and Plaintiff's emotional distress or mental injury is medically diagnosable and of sufficient severity so as to be medically significant.

137.    Defendant acted with a willful, wanton and malicious culpable state, as well as a complete indifference to or conscious disregard for the safety of Plaintiff and other drivers, thereby justifying an award of damages for aggravating circumstances in such sum as will serve to punish Defendant and to deter Defendant and others from like conduct in the future.

WHEREFORE Plaintiff Paul Winka prays for a judgment against Defendant Lyft Inc. in an amount in excess of Twenty-Five Thousand Dollars ($25,000), which is just, fair, and adequate under the

18

Electronically Filed - St Louis County - August 13, 2025 - 09:32 AM

circumstances, for pre-judgment and post-judgment interest, punitive damages, for his costs herein expended, and for such other relief as the Court deems just and proper under the circumstances.

Respectfully submitted,

**GARLAND LAW, P.C.**

/s/ Michael D. Garland
Michael D. Garland, #74663
101 W. Argonne Ave. #202
Kirkwood, MO 63122
Tel: 314-332-6228
Fax: 314-334-1541
Email: michael@garlandlawpc.com

***Attorney for Plaintiff Paul Winka***

Electronically Filed - ST LOUIS COUNTY - August 13, 2025 - 11:06 AM

**In the**

# CIRCUIT COURT
## Of St. Louis County, Missouri

__PAUL WINKA__
Plaintiff/Petitioner

vs.

__LYFT, INC.__
Defendant/Respondent

For File Stamp Only

__August 13, 2025__
Date

__25SL-CC09068__
Case Number

_____
Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now __Plaintiff by and through undersigned counsel__, pursuant
                    Requesting Party

to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Martin Hueckel (HPS Process Service & Investigations)     6642 Clayton Road, Suite 243, Richmond Heights, MO 63117     314-881-8310
Name of Process Server                                    Address                                                       Telephone

_____
Name of Process Server                                    Address or in the Alternative                                Telephone

_____
Name of Process Server                                    Address or in the Alternative                                Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties.  This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
 Lyft Inc. Registered Agent: CT Corporation System
Name
 120 S. Central Ave.
Address
 Clayton, MO 63105
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk


By _____
      Deputy Clerk


_____
Date

*Michael D. Garland*
Signature of Attorney/Plaintiff/Petitioner
 74663
Bar No.
 101 W. Argonne Dr. #202, St. Louis, MO 63122
Address
 (314) 332-6228
Phone No.                                    Fax No.

CCADM62-WS     Rev. 07/22

Electronically Filed - ST LOUIS COUNTY - August 13, 2025 - 11:06 AM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)   Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)   The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)   Appointments may list more than one server as alternates.

(B)   The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)   Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)   No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)   Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site,
https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F)   This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM62-WS     Rev. 07/22

Electronically Filed - ST LOUIS COUNTY - August 13, 2025 - 11:06 AM

**In the**

# CIRCUIT COURT
## Of St. Louis County, Missouri

__PAUL WINKA__
Plaintiff/Petitioner

vs.

__LYFT, INC.__
Defendant/Respondent

__August 13, 2025__
Date

__25SL-CC09068__
Case Number

_____
Division

For File Stamp Only

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now __Plaintiff by and through undersigned counsel__, pursuant
                         Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Martin Hueckel (HPS Process Service & Investigations)    6642 Clayton Road, Suite 243, Richmond Heights, MO 63117    314-881-8310
Name of Process Server                                   Address                                                      Telephone

_____
Name of Process Server                    Address or in the Alternative                    Telephone

_____
Name of Process Server                    Address or in the Alternative                    Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties.  This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:

Lyft Inc. Registered Agent: CT Corporation System
Name
120 S. Central Ave.
Address
Clayton, MO 63105
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

SERVE:
_____
Name
_____
Address
_____
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By _____/S/ Adam Dockery_____
      Deputy Clerk

_____08/14/2025_____
Date

_Michael D. Garland_
Signature of Attorney/Plaintiff/Petitioner
74663
Bar No.
101 W. Argonne Dr. #202, St. Louis, MO 63122
Address
(314) 332-6228
Phone No.                                Fax No.

CCADM62-WS    Rev. 07/22

Electronically Filed - ST LOUIS COUNTY - August 13, 2025 - 11:06 AM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM62-WS      Rev. 07/22



# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>LORNE J. BAKER | | Case Number:  25SL-CC09068 | |
|---|---|---|---|
| Plaintiff/Petitioner:<br>PAUL WINKA | | Plaintiff's/Petitioner's Attorney/Address<br>MICHAEL GARLAND<br>101 W ARGONNE DR. 202<br>KIRKWOOD, MO  63122 | |
| | vs. | | |
| Defendant/Respondent:<br> LYFT INC | | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | | | |

**The State of Missouri to:**     LYFT INC
                                  **Alias:**

**R/A CT CORPORATION**
**SYSTEM**
**120 S CENTRAL AVE**
**CLAYTON, MO  63105**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

*COURT SEAL OF*



*ST. LOUIS COUNTY*

| 14-AUG-2025 | /S/ Adam Dockery |
|---|---|
| Date | Clerk |

**Further Information:**
AD

Case Number: 25SL-CC09068

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date)

at _____ (time).

_____          _____
Printed Name of Officer or Server                    Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on _____ (date).

*(Seal)*          My commission expires: _____ _____

                                                            Date                          Notary Public

**Service Fees (if applicable)**

Summons                                      $_____

Non Est                                        $_____

Sheriff's Deputy Salary

Supplemental Surcharge        $_____10.00_____

Mileage                                       $_____ (_____ miles @ $._____ per mile)

**Total**                                        $_____

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (12-24) SM30 (SMCC) *For Court Use Only:* **Document ID # 25-SMCC-13716** 2 of 2 (25SL-CC09068)    Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**<u>Purpose of Notice</u>**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case.   However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.   Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**<u>Your Rights and Obligations in Court Are Not Affected By This Notice</u>**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**<u>Alternative Dispute Resolution Procedures</u>**

There are several procedures designed to help parties settle lawsuits.   Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.   The services are provided by individuals and organizations who may charge a fee for this help.   Some of the recognized alternative dispute resolutions procedures are:

**(1) <u>Advisory Arbitration:</u>** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

CCADM73

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.  An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105.  The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms.  You should ask your lawyer for further information.

CCADM73



**OFFICE OF THE CIRCUIT CLERK**

Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

Electronically Filed - ST LOUIS COUNTY - September 02, 2025 - 09:20 AM

# AFFIDAVIT OF SERVICE

**State of Missouri**                **County of Saint Louis**                **Circuit Court**

Case Number: 25SL-CC09068

Plaintiff/Petitioner:
**PAUL WINKA**
vs.
Defendant/Respondent:
**LYFT, INC.**

Received by HPS Process Service & Investigations to be served on **Lyft, Inc. c/o CT Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, MO 63129**. I, _Monahur Klueel_ , being duly sworn, depose and say that on the _27_ day of _August_ , 20_25_ at _2_ :_37_ _p_.m., executed service by delivering a true copy of the Summons in Civil Case; and Petition in accordance with state statutes in the manner marked below:

(X) REGISTERED AGENT SERVICE: By serving _Ann Schrader/ CT Corporation_
as _RA / Intake spec._ for the above-named entity.

( ) RECORDS CUSTODIAN SERVICE: By serving _____
as _____ for the above-named entity.

( ) CORPORATE SERVICE: By serving _____
as_____ for the above-named entity.

( ) OTHER SERVICE: As described in the Comments below.

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS:_____
_____
_____
_____

Electronically Filed - ST LOUIS COUNTY - September 02, 2025 - 09:20 AM

## AFFIDAVIT OF SERVICE For 25SL-CC09068

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made. I declare under penalty of perjury that the foregoing is true and correct.

PROCESS SERVER # 558

Appointed in accordance with State Statutes

Subscribed and Sworn to before me on the _28_ day of ___August___ ,_2025_ by the affiant who is personally known to me.

NOTARY PUBLIC

**HPS Process Service & Investigations**
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559

Our Job Serial Number: 2025014206

MELISSA TIERNEY
MY COMMISSION EXPIRES
2-8-2029
NOTARY SEAL
#17302353
LINCOLN COUNTY
NOTARY PUBLIC, STATE OF MISSOURI

Copyright © 1992-2025 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a



# Summons in Civil Case

## IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division:<br>LORNE J. BAKER | Case Number: **25SL-CC09068** | |
|---|---|---|
| Plaintiff/Petitioner:<br>PAUL WINKA<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>MICHAEL GARLAND<br>101 W ARGONNE DR. 202<br>KIRKWOOD, MO  63122 | |
| Defendant/Respondent:<br> LYFT INC | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Pers Injury-Prod Liab | | |

**The State of Missouri to:    LYFT INC**
**Alias:**

**R/A CT CORPORATION**
**SYSTEM**
**120 S CENTRAL AVE**
**CLAYTON, MO  63105**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**COURT SEAL OF**



**ST. LOUIS COUNTY**

| 14-AUG-2025 | /S/ Adam Dockery |
|---|---|
| Date | Clerk |

**Further Information:**
AD

Electronically Filed - ST LOUIS COUNTY - September 02, 2025 - 09:20 AM

Case Number: 25SL-CC09068

Electronically Filed - ST LOUIS COUNTY - September 02, 2025 - 09:20 AM

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐  delivering a copy of the summons and petition to the defendant/respondent.

☐  leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐  (for service on a corporation) delivering a copy of the summons and petition to:

_____ (name) _____ (title).

☐  other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date)

at _____ (time).

_____        _____
     Printed Name of Officer or Server               Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on _____ (date).

*(Seal)*     My commission expires: _____ _____
                                    Date                Notary Public

**Service Fees (if applicable)**

| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - ST LOUIS COUNTY - September 02, 2025 - 09:20 AM

## THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case.   However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.  A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.  Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits.   Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.   The services are provided by individuals and organizations who may charge a fee for this help.   Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.   The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

CCADM73

Electronically Filed - ST LOUIS COUNTY - September 02, 2025 - 09:20 AM

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

Electronically Filed - ST LOUIS COUNTY - September 02, 2025 - 09:20 AM



**OFFICE OF THE CIRCUIT CLERK**

Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

Electronically Filed - ST LOUIS COUNTY - September 05, 2025 - 03:55 PM

# AFFIDAVIT OF SERVICE

**State of Missouri**                    **County of Saint Louis**                    **Circuit Court**

Case Number: 25SL-CC09068

Plaintiff/Petitioner:
**PAUL WINKA**
vs.
Defendant/Respondent:
**LYFT, INC.**

Received by HPS Process Service & Investigations to be served on **Lyft, Inc. c/o CT Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, MO 63129**. I, _Menthir Kheehl_ , being duly sworn, depose and say that on the _27_ day of _August_ , 20_25_ at _2_ :_37_p.m., executed service by delivering a true copy of the Summons in Civil Case; and Petition in accordance with state statutes in the manner marked below:

(X) REGISTERED AGENT SERVICE: By serving _Ann Schrader/ CT Corporation_
as _RA/ Intake spec._ for the above-named entity.

( ) RECORDS CUSTODIAN SERVICE: By serving _____
as _____ for the above-named entity.

( ) CORPORATE SERVICE: By serving _____
as _____ for the above-named entity.

( ) OTHER SERVICE: As described in the Comments below.

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS:_____
_____
_____
_____

Electronically Filed - ST LOUIS COUNTY - September 05, 2025 - 03:55 PM

## AFFIDAVIT OF SERVICE For 25SL-CC09068

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made. I declare under penalty of perjury that the foregoing is true and correct.

PROCESS SERVER # 558
Appointed in accordance with State Statutes

Subscribed and Sworn to before me on the 28 day of August, 2025 by the affiant who is personally known to me.

NOTARY PUBLIC

**HPS Process Service & Investigations**
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559

Our Job Serial Number: 2025014206

MELISSA TIERNEY
MY COMMISSION EXPIRES
2-8-2029
NOTARY SEAL
#17302353
LINCOLN COUNTY
NOTARY PUBLIC, STATE OF MISSOURI

Copyright © 1992-2025 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a